UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

TARYN SINGER,

             Plaintiff,

        -against-

AMERICAN EXPRESS CENTURION BANK,

            Defendant.

------------------------------------------------------------- x

Case No. 7:17-cv-02507-VB

## MEMORANDUM IN SUPPORT OF AMERICAN EXPRESS CENTURION BANK'S MOTION TO DISMISS

STROOCK & STROOCK & LAVAN LLP
Raymond A. Garcia
180 Maiden Lane
New York, New York 10038
Telephone:  212-806-5400
Fax:  212-806-6006
Email:  rgarcia@stroock.com

*Attorneys for Defendant*
*American Express Centurion Bank*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND ..........................................................................................3

        A.      Procedural History ...........................................................................3

        B.      Allegations of the Second Amended Complaint.................................3

III.    ARGUMENT ...............................................................................................4

        A.      Standard on a Motion to Dismiss......................................................4

        B.      Plaintiff Fails to State a Claim Under TILA or Regulation Z Based on
                AECB's Account Renewal Notice or Annual Membership Fee Disclosure...........5

                1.      Plaintiff Fails to State a Claim With Respect to the Account
                        Renewal Notice.......................................................................6

                2.      Plaintiff Fails to State a Claim With Respect to the Annual
                        Membership Fee......................................................................8

        C.      Plaintiff Fails to State a Claim for Violation of the UCSPA ................10

                1.      Because AECB's Alleged Conduct Is Governed by a More
                        Specific Law, the UCSPA Does Not Apply. ..............................10

                2.      Plaintiff Fails to Allege Facts That, If Accepted As True, Would
                        Establish That AECB Is a "Supplier" Engaged In a "Consumer
                        Transaction" Within the Scope of the UCSPA. .........................11

                3.      Plaintiff Fails to Allege That AECB Knowingly or Intentionally
                        Engaged in a Deceptive Practice.............................................12

        D.      Plaintiff Fails to State a Claim for Violation of the UTIAA.................13

                1.      Because AECB's Alleged Conduct Is Governed by TILA and
                        Regulation Z, the UTIAA Also Does Not Apply. ......................13

                2.      Plaintiff Fails to Allege Any "Advertisements" Subject to the
                        UTIAA. ...............................................................................14

                3.      Plaintiff Fails to Allege a Deceptive Trade Practice.................14

        4.     Plaintiff Failed to Provide Notice of Her UTIAA Claim ............................ 15

IV.    CONCLUSION ................................................................................................................. 16

LA 52105519v3

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

Ashcroft v. Iqbal,
 556 U.S. 662 (2009)............................................................................................4, 14

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
 493 F.3d 87 (2d Cir. 2007)........................................................................................4

Ayala v. Am. Home Mortg. Serv.,
 2011 U.S. Dist. LEXIS 84625 (D. Utah June 8, 2011)............................................11

Berneike v. CitiMortgage, Inc.,
 708 F.3d 1141 (10th Cir. 2013) ...............................................................................10

Blackmore v. Wachovia Mortg. Corp.,
 No. 2:12-CV-250-DN, 2013 WL 504388 (D. Utah Feb. 8, 2013)...........................11

Burnett v. Mortg. Elec. Registration Sys., Inc.,
 706 F.3d 1231 (10th Cir. 2013) .........................................................................10, 11

Ford Motor Credit Co. v. Milhollin,
 444 U.S. 555 (1980).................................................................................................5

Gambardella v. G. Fox & Co.,
 716 F.2d 104 (2d Cir. 1983)......................................................................................5

Hale v. MBNA Am. Bank, N.A.,
 No. 99CIV.8831(AGS), 2000 WL 1346812 (S.D.N.Y. Sept. 18, 2000) ..................5

Hauk v. JP Morgan Chase Bank USA,
 552 F.3d 1114 (9th Cir. 2009) ..................................................................................5

Hoverman v. CitiMortgage, Inc.,
 No. 2:11-CV-00118-DAK, 2011 WL 3421406 (D. Utah Aug. 4, 2011)............13, 14

Kee v. R-G Crown Bank,
 656 F. Supp. 2d 1348 (D. Utah 2009)......................................................................12

Martinez v. Best Buy Co.,
 283 P.3d 521 (Utah Ct. App. 2012) ....................................................................12, 13

Mount v. PulsePoint, Inc.,
 No. 16-3194-CV, 2017 WL 1147191 (2d Cir. Mar. 27, 2017), as amended
 (May 3, 2017)............................................................................................................4

LA 52105519v3

Proctor & Gamble Co. v. Haugen,
  947 F. Supp. 1551 (D. Utah 1996) ................................................................15, 16

Reed v. AFNI, Inc.,
  No. 2:09-CV-459 TS, 2011 WL 112430 (D. Utah Jan. 13, 2011) ..........................12

Rhoads v. BAC Home Loans Servicing, LP,
  No. 2:11-CV-0026-TC, 2011 WL 1749475 (D. Utah May 6, 2011) ......................11

Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.,
  144 P.3d 1079 (Utah 2006) ................................................................................15

Sazerac Co., Inc. v. Falk,
  861 F. Supp. 253 (S.D.N.Y. 1994) .......................................................................5

Schwartz v. HSBC Bank USA, N.A.,
  No. 13 CIV. 769 PAE, 2013 WL 5677059 (S.D.N.Y. Oct. 18, 2013) ....................5

Subaru Distributors Corp. v. Subaru of America, Inc.,
  425 F.3d 119 (2d Cir. 2005) .................................................................................4

Thomas v. Wells Fargo Bank, N.A.,
  No. 2:13-CV-686-PMW, 2014 WL 657394 (D. Utah Feb. 20, 2014) ....................10

Thompson v. ABVI Goodwill Servs.,
  531 F. App'x 160 (2d Cir. 2013) ..........................................................................4

**Statutes**

15 U.S.C. § 1601 et seq. ................................................................................ passim

15 U.S.C. § 1637 ......................................................................................8, 9

Utah Code Ann. § 13–11a–1 et seq. ............................................................... passim

Utah Code Ann. § 13-11-4 ..........................................................................13

Utah Code Ann. § 13-11-22 .........................................................................10

Utah Code Ann. § 13-11a-1 et seq. ................................................................ passim

Utah Code Ann. § 13-11a-2 .........................................................................14

Utah Code Ann. § 13-11a-4 .........................................................................15

Utah Code Ann. § 13-11a-5 .........................................................................13

**Rules and Regulations**

12 C.F.R. Part 226 ................................................................................................6, 7, 9

12 C.F.R. Part 1026 .................................................................................................. *passim*

12 C.F.R. § 1026.6 ................................................................................................9

12 C.F.R. § 1026.7 ................................................................................................7

12 C.F.R. § 1026.9 ............................................................................................6, 8. 9

76 Fed. Reg. 79767 (Dec. 22, 2011) .....................................................................6

Fed. R. Civ. P. 12 ................................................................................................ *passim*

LA 52105519v3

## I.     INTRODUCTION

In her Second Amended Complaint, plaintiff Taryn Singer ("Plaintiff") asserts claims against defendant American Express Centurion Bank ("AECB") for violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and its implementing regulation, 12 C.F.R. part 1026 ("Regulation Z"), as well as for violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 et seq. (the "UCSPA"), and the Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-1 et seq. (the "UTIAA").  Plaintiff contends that AECB failed to include a reference to the renewal notice on the "front page" of her billing statement and failed to state how and when she could act to avoid the annual membership fee.  Plaintiff also contends that AECB failed to disclose that the annual fee was supposedly "computed" on a monthly basis because AECB had an undisclosed practice of voluntarily providing pro-rata refunds to cardholders who canceled their accounts after paying the annual fee.  As discussed below, Plaintiff's conclusory allegations in this regard are without merit and fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

First, Plaintiff fails to state a claim under TILA or Regulation Z.  Contrary to Plaintiff's conclusory legal assertions, neither TILA nor Regulation Z requires a creditor to include a reference to the renewal disclosures on the "front page" of the statement.  Instead, the applicable regulation requires a reference on "the front of the statement" if the disclosures themselves appear on "the back" of the statement.  Plaintiff interprets "the front of the statement" to mean the front of the first page of the statement, but this interpretation is untenable.  When Regulation Z requires disclosures to appear on the front of the first page of the statement, it expressly says "the front of the first page of the statement."  Moreover, Plaintiff's interpretation would render the reference to "the back" of the statement nonsensical.

Similarly, neither TILA nor Regulation Z mandates the disclosure of a specific date by which a consumer must act to avoid a renewal fee.  Instead, TILA requires disclosure of the date <u>or</u> the month <u>or</u> the billing period after which the account will expire if not renewed and the method by which the consumer may terminate the account.  Here, Plaintiff's account statement expressly informed her that her account would renew the next month and that she could avoid paying the annual fee by calling and canceling her account when she received the statement in which the annual fee was billed.  That is all that TILA and Regulation Z require.

Finally, under TILA and Regulation Z, disclosure of an annual fee is sufficient if it states the amount of the fee and that the fee will be imposed annually.  Indeed, the sample disclosure provided as guidance on this requirement provides simply: "Annual Fee | $20."  Here, AECB disclosed that the membership fee was $75 and that it was imposed annually.  Again, that is all that TILA and Regulation Z require.

<u>Second</u>, Plaintiff fails to state a claim for violation of the UCSPA based on AECB's alleged failure to disclose that AECB may have provided her with a voluntary refund of part of the annual fee if she had canceled her account.  By its own terms, the UCSPA does not apply where the alleged conduct is governed by a more specific law (here TILA and Regulation Z).  Further, Plaintiff fails to allege that AECB is a "supplier" engaged in a "consumer transaction" as those terms are defined in the statute.  In addition, Plaintiff fails to sufficiently allege the requisite elements of either (1) knowing or intentional conduct by AECB or (2) a deceptive practice within the meaning of the UCSPA.

<u>Third</u>, Plaintiff fails to state a claim for violation of the UTIAA.  Like her claim under the UCSPA, Plaintiff's UTIAA claim is barred because disclosure of the annual fee is governed by TILA and Regulation Z, and Plaintiff also fails to allege that the disclosure at issue is an

"advertisement" within the scope of the statute.  Further, as with her claim under the UCSPA, Plaintiff fails to allege any "deceptive" conduct on the part of AECB that is even remotely comparable to any of the deceptive acts and practices enumerated in the UTIAA.  Finally, Plaintiff's UTIAA claim must be dismissed because Plaintiff failed to provide notice of her claim before filing suit, as required by the UTIAA.

Accordingly, AECB respectfully requests that the Court grant the Motion and dismiss the foregoing claims in their entirety.

## II.     BACKGROUND

### A.     Procedural History

Plaintiff commenced this action on April 6, 2017.  AECB answered Plaintiff's original complaint on June 26, 2017.  (ECF No. 12)  On July 17, 2017, Plaintiff filed an Amended Complaint, which added claims under TILA and Regulation Z, as well as the UCSPA and UTIAA.  (ECF No. 17)  American Express moved to dismiss several counts in the Amended Complaint on August 23, 2017.  (ECF Nos. 21 and 21.)  In accordance with this Court's August 24, 2017 order, Plaintiff opted to file a further amended complaint in lieu of opposing American Express's motion to dismiss.  (ECF Nos. 24 and 25.)  Plaintiff's Second Amended Complaint, which is the subject of the instant motion, was filed on September 14, 2017.  (ECF No. 25.)

### B.     Allegations of the Second Amended Complaint

Plaintiff "is the holder of a 'Blue Cash Preferred' credit card account" issued by AECB. (2d Am. Compl. ¶ 17.)  As relevant here, Plaintiff alleges that she received an annual renewal notice from AECB that disclosed the membership fee associated with her account on page seven of her twelve- page billing statement without also referring to the disclosure on "the front page" of the statement.  (Id. ¶ 68.)  Plaintiff further alleges that the renewal notice "did not state precisely what measures Plaintiff had to take with respect to the account, and by which date

Plaintiff had to take them, to avoid paying the pending fee." (Id. ¶ 69.)  In addition, Plaintiff

alleges that AECB misrepresented the annual membership fee associated with her account

because AECB disclosed the fee as an "annual" fee but supposedly "computed and imposed" the

fee on a monthly basis.  (Id. ¶ 72.)  Based on these allegations, Plaintiff purports to assert claims

for violation of TILA and Regulation Z, the UCSPA and the UTIAA.

### III.    ARGUMENT

**A.      Standard on a Motion to Dismiss**

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering a

motion under Rule 12(b)(6), the Court "must accept as true all of the allegations contained in a

complaint . . . ." Id. at 678.  However, this principle is "inapplicable to legal

conclusions." Iqbal, 556 U.S. at 678.  "Conclusory allegations of law do not suffice." Mount v.

PulsePoint, Inc., No. 16-3194-CV, 2017 WL 1147191, at *1 (2d Cir. Mar. 27, 2017), as amended

(May 3, 2017) (internal quotation marks omitted).  "Allegations that are conclusory or

unsupported by factual assertions are insufficient." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,

493 F.3d 87, 99 (2d Cir. 2007); see also Thompson v. ABVI Goodwill Servs., 531 F. App'x 160,

161 (2d Cir. 2013) ("We ignore [t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, which are not entitled to the presumption of truth . . .

." (internal quotation marks omitted)).

"In determining the adequacy of the complaint, the court may consider any written

instrument attached to the complaint as an exhibit or incorporated in the complaint by reference,

as well as documents upon which the complaint relies and which are integral to the complaint."

Subaru Distributors Corp. v. Subaru of America, Inc., 425 F.3d 119, 122 (2d Cir. 2005).  "[I]f the

allegations of a complaint are contradicted by documents made a part thereof, the document

controls and the court need not accept as true the allegations of the complaint." Sazerac Co., Inc.

v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

**B.      Plaintiff Fails to State a Claim Under TILA or Regulation Z Based on AECB's Account Renewal Notice or Annual Membership Fee Disclosure.**

Congress enacted TILA for the "purpose of promoting 'the informed use of credit' by

assuring 'meaningful disclosure of credit terms' to consumers." Ford Motor Credit Co. v.

Milhollin, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. § 1601).  However, "[m]eaningful

disclosure does not mean more disclosure." Id. at 568 (emphasis added).  "[W]hen neither

Congress nor the Federal Reserve Board has elected to require a particular disclosure . . . a court

should not impose that disclosure requirement." Hauk v. JP Morgan Chase Bank USA, 552 F.3d

1114, 1121 (9th Cir. 2009).  Further, the Second Circuit has "mostly declin[ed] to extend liability

to creditors for insignificant or technical violations," and "[d]istrict courts in this circuit have

largely also dismissed purely technical claims." Schwartz v. HSBC Bank USA, N.A., No. 13

CIV. 769 PAE, 2013 WL 5677059, at *8 (S.D.N.Y. Oct. 18, 2013) (collecting cases); see also

Hutter v. Countrywide Bank, N.A., No. 09-CV-10092 NSR, 2015 WL 5439086, at *4 (S.D.N.Y.

Sept. 14, 2015) (same); Gambardella v. G. Fox & Co., 716 F.2d 104, 117 (2d Cir. 1983) (finding

disclosure inaccurate but concluding that "any technical inaccuracy in the statement is unlikely

to mislead consumers, and that [defendant's] disclosure of periodic and annual rates, though

hardly made in a model format, is sufficient under the law"); Hale v. MBNA Am. Bank, N.A.,

No. 99CIV.8831(AGS), 2000 WL 1346812, at *5 (S.D.N.Y. Sept. 18, 2000) (recognizing that

"consumers should not misuse TILA 'as an instrument of harassment and oppression against the

lending industry'") (quoting <u>Griesz v. Household Bank</u>, 8 F.Supp.2d 1031, 1037 (N.D. Ill. 1998)).[1]

### 1.    Plaintiff Fails to State a Claim With Respect to the Account Renewal Notice.

Plaintiff alleges that AECB violated TILA and Regulation Z by including an account renewal notice on page seven of her twelve-page billing statement rather than on the "front page" of the statement (2d Am. Compl. ¶¶ 67-68) and by allegedly failing to "state precisely what measures Plaintiff had to take with respect to the account, and by which date Plaintiff had to take them, to avoid paying the pending fee." (<u>Id.</u> ¶ 69.) Neither contention sufficiently states a claim for relief under Rule 12(b)(6).

<u>First</u>, contrary to Plaintiff's conclusory legal allegations, neither TILA nor Regulation Z requires account renewal disclosures to appear on the "front page" of the statement. TILA is silent as to the placement of any such disclosures, and Regulation Z merely provides that if the required disclosures appear "on <u>the back</u> of a periodic statement," then "a reference to those disclosures" must appear "on <u>the front</u> of the statement":

> *Notification on periodic statements.* The disclosures required by this paragraph may be made on or with a periodic statement. If any of the disclosures are provided on the back of a periodic statement, the card issuer shall include a reference to those disclosures on the front of the statement.

12 C.F.R. § 1026.9(e)(2) (italics in original; emphasis added). Here, consistent with § 1026.9(e)(2), AECB provided the renewal notice beginning on the <u>front</u> of Plaintiff's statement (on page 7) and continuing on the back of the statement (on page 8). (Request for Judicial Notice in Support of American Express Centurion Bank's Motion to Dismiss ("RJN"), Ex. A at

---

[1] Regulation Z, formerly 12 C.F.R. part 226, was originally promulgated by the Board of Governors of the Federal Reserve System. It was republished without substantive changes by the Bureau of Consumer Financial Protection (the "CFPB") as 12 C.F.R. part 1026 after authority to issue regulations under TILA was transferred to the CFPB. <u>See</u> Truth in Lending Act (Regulation Z), 76 Fed. Reg. 79767 (Dec. 22, 2011).

7; 2d Am. Compl. Ex. A.)  AECB also included two references to the disclosure.  The first of

these references appeared on the <u>front</u> of the statement (on page 3) and provided: "Your

membership will be renewed next month.  Please refer to the Renewal Notice on **Page 7.**"  (RJN,

Ex. A at 3 (bold in original).)  The second reference also appeared on the <u>front</u> of the statement

(at the bottom of page 7) and indicated that the renewal disclosures continued on the back of the

statement: "Continued on reverse."  (2d Am. Compl. Ex. A.)  Plaintiff apparently reads "front of

the statement" to mean the front of the <u>first page</u> of the statement, but this makes no sense in

context.  As an initial matter, the CFPB knows how to designate disclosures that must appear on

the front <u>of the first page</u> of the statement: it expressly requires them to appear on the front <u>of the</u>

<u>first page</u> of the statement.  <u>See, e.g.</u>, 12 C.F.R. § 1026.7(b)(13) (requiring disclosure of the

payment due date "on the front <u>of the first page</u> of the periodic statement") (emphasis added).

Further, requiring the disclosures on the front of the first page of the statement would be contrary

to the CFPB's Official Interpretation of the regulation, which explains that the renewal

disclosures "need not appear . . . in a prominent location."  12 C.F.R. pt. 1026, supp. I, cmt. 9(e)-

2.  In addition, if "the front" of the statement means the front of the <u>first page</u> of the statement,

then "the back" of the statement would logically mean the back of the <u>last page</u> of the statement.

Thus, under Plaintiff's reading of the statute, the requirement to include a reference to the

renewal disclosure would be triggered only if the disclosure appeared on the reverse of the

statement's final page, rather than the back of some other page of the statement.  Such an

interpretation is untenable, as it would hinder rather than enhance disclosure to the consumer.

     <u>Second</u>, neither TILA nor Regulation Z mandates the disclosure of a specific date by

which a consumer must act to avoid a renewal fee.  Instead, TILA requires disclosure of "the

date by which, the month by which, <u>or</u> the billing period at the close of which, the account will

expire if not renewed" and "the method by which the consumer may terminate continued credit availability under the account."  15 U.S.C. § 1637(d)(1)(A),(C) (emphasis added).  Regulation Z similarly does not require a specific date; instead, it requires disclosure of "[h]ow and when the cardholder may terminate credit availability under the account to avoid paying the renewal fee, if applicable."  12 C.F.R. § 1026.9(e)(1)(ii).  Here, Plaintiff's account statement expressly informed her that "[y]our Account renews next month" and that "[w]hen you receive the statement in which the annual fee is billed, you can avoid paying the annual fee by calling the Customer Care phone number on Page 2 to cancel your Account."  (2d Am. Compl. Ex. A, ECF No. 25-1, Page 3 of 4.)  AECB thereby satisfied its obligation under TILA and Regulation Z by informing Plaintiff of <u>when</u> the account would expire if not renewed and <u>how</u> and when she could terminate her account to avoid paying the annual fee.

> **2.      Plaintiff Fails to State a Claim With Respect to the Annual Membership Fee.**

Plaintiff also argues that AECB violated TILA and Regulation Z by purportedly failing to "disclose the 'method of computation'" of her annual membership fee.  (2d Am. Compl. ¶ 71 (citing 15 U.S.C. § 1637(a)(5) and 12 C.F.R. §1026.6(b)(2)(ii).)  Specifically, Plaintiff alleges that:

> [a]lthough American Express represented this as an annual fee in its disclosures, for a time during the relevant period it computed and imposed this fee on a monthly basis, as evidenced by (i) Amex's prorated refunds of the Membership Fee to those whose fee-based accounts were kept open, or as is, for only part of the year and (ii) Amex's subsequent amendment to the card agreement making Membership Fees wholly nonrefundable.  <u>Exhibit C</u>.

(2d Am. Compl. ¶ 72; <u>see also id.</u> ¶ 33 (alleging that AECB "disclos[ed] an Annual Membership Fee without disclosing that the fee, while debited once a year, accrued on a monthly basis").)  Plaintiff's claim in this regard is equally without merit.

TILA requires creditors to disclose, before opening an account under an open-end credit plan, the "charges which may be imposed as part of the plan, and their method of computation, <u>in accordance with regulations of the Bureau</u>." 15 U.S.C. § 1637(a)(5) (emphasis added). Under Regulation Z, the account-opening disclosures must include "[<u>a</u>]<u>ny annual or other periodic fee</u> that may be imposed for the issuance or availability of an open-end plan . . . ; <u>how frequently it will be imposed;</u> and <u>the annualized amount</u> of the fee." 12 C.F.R. § 1026.6(b)(2)(ii)(A) (emphasis added). For renewal notices, issuers must make the "disclosures contained in § 1026.60(b)(1) through (b)(7) that would apply if the account were renewed." 12 C.F.R. § 1026.9(e)(1)(i). As with the account-opening disclosures, the CFPB's Official Interpretation of the regulation provides that the disclosure of annual fees under § 1026.60(b)(2) is sufficient if it includes "the <u>amount</u> of the fee, how <u>frequently it will be imposed</u>, and the <u>annualized amount</u> of the fee." 12 C.F.R. pt. 1026, supp. I, cmt. 60(b)(2)-5. The CFPB further advises to "[s]ee Sample G-10(C) for guidance on how to meet these requirements." <u>Id.</u> The referenced sample provides, in pertinent part: "Annual Fee | $20." 12 C.F.R. pt. 1026, app. G, sample G-10(C). Nothing more is required.

Here, Plaintiff's account statement satisfied these disclosure requirements by expressly disclosing the membership fee, that the fee was assessed annually and the specific amount of the fee. (<u>See</u> 2d Am. Compl. Ex. A, ECF No. 25-1, Page 3 of 4 ("**Annual Membership Fee:** The annual membership fee for your Account is $75.00." (bold in original)). Likewise, AECB disclosed the annual fee, consistent with the language in Sample G-10(C), in Plaintiff's Cardmember Agreement. (RJN, Ex. B at 1.) Plaintiff admits in the Second Amended Complaint that the annual fee was, in fact, billed annually rather than monthly. (<u>See</u> 2d Am. Compl. ¶ 33.) Contrary to Plaintiff's conclusory legal assertions, nothing in TILA or Regulation Z requires a

creditor to disclose that it may provide pro-rated refunds of an annual fee that it has properly disclosed in accordance with the foregoing statute and regulations.  Accordingly, Plaintiff fails to state a claim under TILA or Regulation Z on this basis.

**C.   Plaintiff Fails to State a Claim for Violation of the UCSPA.**

**1.   Because AECB's Alleged Conduct Is Governed by a More Specific Law, the UCSPA Does Not Apply.**

The UCSPA "generally prohibits deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction."  Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1241 (10th Cir. 2013) (internal quotation marks omitted).  However, the UCSPA expressly "does not apply to . . . an act or practice required or specifically permitted by or under federal law . . . ."  Utah Code Ann. § 13-11-22(1)(a).  Indeed, the Utah Supreme Court has made clear that "a USCPA claim is barred when the complained-of conduct was governed by other, more specific law."  Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1149-50 (10th Cir. 2013) (citing Carlie v. Morgan, 922 P.2d 1 (Utah 1996)); see also Thomas v. Wells Fargo Bank, N.A., No. 2:13-CV-686-PMW, 2014 WL 657394, at *3 (D. Utah Feb. 20, 2014).

Here, Plaintiff's UCSPA claim is premised on the allegation that AECB "characterized its fee for availability of credit and a package of consumer benefits to Plaintiff as a generally nonrefundable annual fee, rather than a series of monthly membership fees collected in advance for which customers who cancelled or had been cancelled early could obtain refunds for unused months. . . ."  (2d Am. Compl. ¶ 80.)  As discussed above (and as alleged in Plaintiff's Second Amended Complaint), the disclosure of Plaintiff's membership fee is governed by TILA and Regulation Z.  Because the alleged misconduct in this case involves a specifically required federal disclosure, Plaintiff's USCPA claim necessarily fails.  See, e.g., Thomas, 2014 WL 657394, at *3 (dismissing UCSPA claim, holding that "[b]y admitting that the FCRA imposes

duties upon the furnishers of credit information, Plaintiff has essentially conceded that the FCRA

is the more specific statutory regime in this case"); Rhoads v. BAC Home Loans Servicing, LP,

No. 2:11-CV-0026-TC, 2011 WL 1749475, at *3 (D. Utah May 6, 2011) (same under TILA and

Real Estate Settlement Procedures Act).  Accordingly, Plaintiff fails to state a claim under the

UCSPA on this basis.[2]

> **2.    Plaintiff Fails to Allege Facts That, If Accepted As True, Would Establish That AECB Is a "Supplier" Engaged In a "Consumer Transaction" Within the Scope of the UCSPA.**

The UCSPA "prohibits deceptive or unconscionable acts or practices by a supplier in

connection with a consumer transaction."  Burnett v. Mortg. Elec. Registration Sys., Inc., 706

F.3d 1231, 1241 (10th Cir. 2013) (internal quotation marks omitted; emphasis added).  By its

terms, the UCSPA does not apply to extensions of credit.  See Blackmore v. Wachovia Mortg.

Corp., No. 2:12-CV-250-DN, 2013 WL 504388, at *3 (D. Utah Feb. 8, 2013) (holding defendant

financial institutions that extended a loan to plaintiff were not "suppliers" engaged in a

"consumer transaction" under the scope of the UCSPA); Ayala v. Am. Home Mortg. Serv., 2011

U.S. Dist. LEXIS 84625, at *5 (D. Utah June 8, 2011) (holding that a mortgage loan was not a

"consumer transaction" under the UCSPA because it was not "a sale, lease, assignment, award

by chance, or other written or oral transfer or disposition of goods, services, or other property,

both tangible and intangible (except securities and insurance)" (quoting Utah Code sec. 13-11-

3(2)(a)), report and recommendation adopted, 2011 U.S. Dist. LEXIS 85001 (D. Utah July 30,

---

[2] Plaintiff also alleges that AECB's "representations in billing statements, or in other account renewal materials it furnished Plaintiff, that the fee, after it appeared on the billing statement, could be reversed in full indefinitely, when in fact there was only a limited time for her to obtain that full reversal, was a deceptive act or practice under the UCSPA and/or the UTIAA."  (Id. ¶ 81.)  This allegation, in addition to being a mere legal conclusion, is unintelligible given Plaintiff's allegation in the prior paragraph that AECB did not disclose that the annual fee may be refundable.  In any event, because the alleged misconduct in this case involves a specifically required federal disclosure, Plaintiff's USCPA claim also fails in this regard.

LA 52105519v3

2011).  Plaintiff's conclusory legal assertions to the contrary are insufficient to state a claim under Rule 12(b)(6).

### 3. Plaintiff Fails to Allege That AECB Knowingly or Intentionally Engaged in a Deceptive Practice.

"[T]he plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice . . . ."  Martinez v. Best Buy Co., 283 P.3d 521, 523 (Utah Ct. App. 2012) (citing Utah Code Ann. § 13-11-4(2) (providing that "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally" engages in proscribed conduct)).  Utah courts have consistently recognized intent as an element of a UCSPA claim.  See id. (collecting cases).  Further, "[t]he UCSPA is intended not only to protect consumers but also to "protect suppliers who in good faith comply with [its] provisions."  Martinez, 283 P.3d at 525 (quoting Utah Code Ann. § 13-11-2(6) (2009)).  To be actionable under the UCSPA, the challenged conduct must be "comparable to the specific categories of deceptive acts and practices listed in the UCSPA."  Id. (citing Utah Code Ann. § 13-11-4(2) (Supp. 2011)).

Here, Plaintiff fails to allege facts showing that AECB acted either knowingly or intentionally.  Instead, Plaintiff relies on a single conclusory allegation (asserted for the first time in the Second Amended Complaint), that AECB "knowingly or intentionally" failed to disclose that the annual fee was supposedly " a series of monthly membership fees collected in advance . . . ."  (2d Am. Compl. ¶ 80.)  As a result, Plaintiff's claim necessarily fails.  See, e.g., Kee v. R-G Crown Bank, 656 F. Supp. 2d 1348, 1356 (D. Utah 2009) (dismissing UCSPA claim where plaintiff failed to sufficiently plead that the defendants "committed a deceptive act or practice 'knowingly or intentionally'" (quoting Utah Code Ann. § 13–11–4(2))); cf. Reed v. AFNI, Inc., No. 2:09-CV-459 TS, 2011 WL 112430, at *3 (D. Utah Jan. 13, 2011) (on summary judgment,

rejecting UCSPA claim in part due to plaintiff's failure to present evidence of intent).  Further,

Plaintiff fails to allege any "deceptive" conduct on the part of AECB.  Plaintiff alleges, instead,

simply that AECB failed to disclose that cardholders might receive a pro-rated refund of the

annual membership fee.  Fatal to her claims, failure to disclose a voluntary refund policy is not

even remotely comparable to any of the deceptive acts and practices listed in the UCSPA.  See

Martinez, 283 P.3d at 525; Utah Code Ann. § 13-11-4(2).  Accordingly, Plaintiff's UCSPA claim

should be dismissed.

**D.     Plaintiff Fails to State a Claim for Violation of the UTIAA.**

   **1.     Because AECB's Alleged Conduct Is Governed by TILA and Regulation Z,
            the UTIAA Also Does Not Apply.**

 "The purpose of [the UTIAA] is to prevent deceptive, misleading, and false advertising

practices and forms in Utah."  Utah Code Ann. § 13-11a-1.  However, similar to the UCSPA, the

UTIAA "does not apply to [] conduct in compliance with the orders or rules of, or a statute

administered by, a federal, state, or local governmental agency . . . ."  Utah Code Ann. § 13-11a-

5(1).  "Therefore, if a specific law regulates the transaction at issue, then the UCSPA does not

apply to that transaction."  Hoverman v. CitiMortgage, Inc., No. 2:11-CV-00118-DAK, 2011

WL 3421406, at *9 (D. Utah Aug. 4, 2011) (Because "aspects of the transactions between

[plaintiff] and [defendant] are governed by federal laws such as the Truth in Lending Act and the

Real Estate Settlement Procedures Act[,] the UCSPA does not apply to [plaintiff's] transactions

with [defendant], even if he had sufficiently alleged conduct in violation of [the UTIAA].")

        Here, Plaintiff's UTIAA claim is premised on the same allegations as her claim for

violation of the UCSPA, i.e., that AECB characterized Plaintiff's annual membership fee "as a

generally nonrefundable annual fee, rather than a series of monthly membership fees collected in

advance for which customers who cancelled or had been cancelled early could obtain refunds for

unused months. . . ." (2d Am. Compl. ¶ 80.)  As already shown, AECB's disclosure of
Plaintiff's membership fee was subject to TILA and Regulation Z.  See supra Section III.B.1, 2.
Therefore, Plaintiff's UTIAA claim, like her UCSPA claim, fails to state a claim under Rule
12(b)(6).

> **2.      Plaintiff Fails to Allege Any "Advertisements" Subject to the UTIAA.**

The purpose of [the UTIAA] is to prevent deceptive, misleading, and false advertising
practices and forms in Utah."  Utah Code Ann. § 13–11a–1 (emphasis added).  The UTIAA
defines an "advertisement" as:

> [A]any written, oral, or graphic statement or representation made
> by a supplier in connection with the solicitation of business.  It
> includes, but is not limited to, communication by noncable
> television systems, radio, printed brochures, newspapers, leaflets,
> flyers, circulars, billboards, banners, or signs.

Utah Code Ann. § 13-11a-2.

In her Second Amended Complaint, Plaintiff fails to allege any facts identifying any
advertisements from AECB, i.e., any actual statements or representations made in connection
with the solicitation of business.  Instead, Plaintiff merely parrots the statute, alleging that
AECB's "written communications with Plaintiff . . . regarding the issuance or the continued
availability of credit and a package of consumer benefits were 'advertisements,' as that term is
defined by the UTIAA, because at all relevant times they were made by a supplier in connection
with the solicitation of business."  (2d Am. Compl. ¶ 79.)  Such "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory statements," are insufficient to state
a claim under Rule 12(b)(6).  Iqbal, 556 U.S. at 678.

> **3.      Plaintiff Fails to Allege a Deceptive Trade Practice.**

The UTIAA "is used to prohibit '[d]eceptive trade practices,' which 'create[ ] a
likelihood of confusion or of misunderstanding."  Hoverman, 2011 WL 3421406, at *9 (quoting

Utah Code Ann. § 13-11a-3(1)(t)).  Deceptive trade practices under the UTIAA are enumerated under section 13-11a-3, which also includes a "catch-all" provision.  See Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc., 144 P.3d 1079, 1082 (Utah 2006).  As with the UCSPA, "[t]he statute requires that any confusion or misunderstanding must be of a magnitude *similar* to the related provisions" enumerated in the statute.  Id. (emphasis in original).  "In assessing whether conduct 'similarly creates a likelihood of confusion or of misunderstanding,' we note that the statute generally addresses 'false front' business operations that attract customers by misrepresenting the nature, location, source, or quality of their goods or services."  Id. at 1083.  Accordingly, statements that are "perhaps confusing to some," but "do[] not invoke the type of deceptive misrepresentation contemplated under the statute," are not misleading or confusing under the UTIAA.  Id. at 1083.

Here, as with her claim under the UCSPA, Plaintiff fails to allege any "deceptive" conduct on the part of AECB.  Plaintiff alleges only that AECB failed to disclose that cardholders might receive a pro-rated refund of the annual membership fee, and failure to disclose a voluntary refund policy is not even remotely comparable to any of the deceptive acts and practices enumerated in the UTIAA.  Accordingly, Plaintiff's UTIAA claim should similarly be dismissed on this basis.

### 4.      Plaintiff Failed to Provide Notice of Her UTIAA Claim.

The UTIAA provides that "[n]o action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant and provides the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement."  Utah Code Ann. § 13-11a-4.  This provision has been held to apply to suits seeking damages as well as injunctive relief.  See Proctor & Gamble Co. v. Haugen, 947 F. Supp. 1551, 1555 (D. Utah 1996) ("The

next question is whether Plaintiffs may maintain an action for damages under the [UTIAA] even though Plaintiffs cannot maintain one for injunctive relief under that Act.  The court finds that they may not.  Under the [UTIAA], a plaintiff must first give the required notice to entitle it to injunctive relief before that plaintiff may sue for damages.").

Here, Plaintiff does not allege that she provided notice of the alleged violation or provide AECB with an opportunity to provide a corrective notice.  This Court should follow the analysis set forth in <u>Haugen</u> and similarly find that Plaintiff's UTIAA claim must be dismissed.  <u>See id.</u> ("[B]ecause Plaintiffs did not allege that they gave notice to Defendants . . . , Plaintiffs are not entitled to seek either injunctive relief or damages under the TIAA and that claim must be dismissed.").

## IV.   CONCLUSION

For the foregoing reasons, AECB respectfully requests that the Court grant the Motion in its entirety.

Dated:  New York, New York                   STROOCK & STROOCK & LAVAN LLP
        October 12, 2017

                                             By:   <u>/s/ Raymond A. Garcia</u>
                                                   Raymond A. Garcia

                                             180 Maiden Lane
                                             New York, New York 10038
                                             Telephone:  212-806-5400
                                             Fax:  212-806-6006
                                             Email:  rgarcia@stroock.com

                                             *Attorneys for Defendant*
                                             *American Express Centurion Bank*

LA 52105519v3